# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ROBERT ESTLE CORVIN, | ) |
| | ) |
|           **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:11-CV-391 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|           **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Robert Corvin ("Corvin") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for both supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 1614(a)(3)(A); 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda and argument of counsel and the applicable law, and conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Corvin's motion for summary judgment (Dkt # 14), and **GRANTING** the Commissioner's motion for summary judgment (Dkt # 16).

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir.

2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Corvin failed to demonstrate that he was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Corvin bears the burden of proving that he is disabled within the meaning of the Act. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education and work experience. *See* 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. *Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983);

*Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Corvin was born on December 7, 1977 (Administrative Record, hereinafter "R." 150) and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). Corvin's date last insured is June 30, 2007, and thus, he must show that his disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). To receive SSI benefits, Corvin must establish that his disability began on or after the date he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R § 416.501. Corvin has associates degrees in auto mechanics and computer-aided drafting. (R. 42.) Corvin's past relevant work includes working as a customer service representative for Rent-A-Center, which was semi-skilled, heavy work. (R. 62.) Corvin left this job voluntarily due to his alleged physical limitations (R. 44.) Corvin also worked as a computer assisted drafter and car mechanic. (R. 46-47.) However, based on Corvin's earning records, the ALJ found that Corvin has no past work at the substantial gainful

3

activity level, and thus has no "past relevant work," and has not engaged in substantial gainful activity during the period of alleged disability. (R. 18.)

Corvin reported that during the relevant period, he had the capacity to care for his own needs, clean, do laundry, prepare his own meals, drive a vehicle, and take his child to and from school. (R. 185-88.) Corvin also reported that he goes outside daily, talks to his father several times a week, and goes food shopping every other day for 30 minutes to an hour. (R. 187-89).

## Claim History

Corvin protectively filed for SSI and DBI, claiming that his disability began on May 1, 2007, due to problems with his left knee, bulging discs, and high cholesterol. (R. 202.) The state agency denied his application at the initial and reconsideration levels of administrative review. (R. 68-71, 91-92.) On November 17, 2009, ALJ Robert S. Habermann held a hearing to consider Corvin's disability claim. (R. 16.) Corvin was represented by counsel at the hearing, which included testimony from Corvin, medical expert Ward Stevens, M.D., and vocational expert Robert Jackson. (R. 16.)

On February 17, 2010, the ALJ entered his decision denying Corvin's claims for DIB and SSI. (R. 16.) The ALJ found that Corvin's musculoskeletal complaints were severe impairments. Considering these impairments, the ALJ found that Corvin retained the RFC to perform light work, except that he is limited to tasks that involve no more than occasional stooping, crouching, kneeling, balancing, overhead reaching and pushing/pulling with his hands. He is limited in his ability to lift heavy objects, and in his ability to climb ramps or stairs. He must avoid crawling or climbing ladders, ropes and scaffolding, and unprotected heights, and can tolerate only occasional exposure to vibration and noise. (R. 27-28.) The ALJ determined that Corvin has no

4

past relevant work. However, given the evidence obtained from the Vocational Expert at the administrative hearing, the ALJ found that Corvin can perform work, such as night watchman, lobby attendant, usher, and parking lot attendant, all of which exist in significant numbers in the national economy. (R. 32.)  On June 17, 2011, the Appeals Council denied Corvin's request for review, and this appeal followed. (R. 1-4.)

## ANALYSIS

### Treating Physician Opinion

Corvin first argues that the ALJ erred by giving greater weight to the opinion of the medical expert, Dr. Stevens, than Corvin's treating physician, Douglas L. Rogney, M.D.  In determining Corvin's RFC, the ALJ considered Dr. Rogney's opinion, but did not give it controlling weight, finding it to be inconsistent with other evidence in the record; including Dr. Rogney's own treatment records.  The ALJ gave greater weight to the opinion of Dr. Stevens, who found Corvin capable of performing a wide range of light work.

Treating physicians' opinions are given controlling weight if they are supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001);  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); SSR 96-2p.

5

When determining whether the treating physician's opinion is to be given controlling weight, it is appropriate for the ALJ to consider the evidence in support of the opinion, and to determine the opinion's consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must consider a number of factors regarding the treating physician's opinion, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ is required to give specific reasons for the weight given to the treating physician's medical opinion, which are supported by evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p.

The ALJ's decision to give Dr. Rogney's opinion little weight is supported by substantial evidence. As the ALJ noted, Dr. Rogney's opinion is not supported by the medical evidence in the record, and is contrary even to his treatment notes.

Corvin began treatment with Dr. Rogney in June 2008 for back pain. In November, 2009, Dr. Rogney completed two Clinical Assessment of Pain forms, dated May 1, 2007 and November 12, 2009.[1] (R. 973, 975.) On both forms, Dr. Rogney circled the option characterizing Corvin's pain as incapacitating, and noting that physical activity such as walking, standing and bending increases Corvin's pain to the extent that medication and/or bed rest is necessary. (R. 973, 975-6.)

---

[1] The May 1, 2007 form contains Dr. Rogney's opinion of Corvin's prior medical situation, based upon his review of Corvin's medical records. Dr. Rogney completed the form again in November 2009, but backdated it for May 1, 2007.

6

Dr. Rogney's opinion of Corvin's limitations is not supported by Corvin's medical records. Corvin began seeking treatment at the Salem Veteran's Affairs Medical Center ("VAMC") for low back pain in October 2006. (R. 334.) In November 2006, an MRI taken of Corvin's spine showed that he had mild disc desiccation at L4-5 and L5-S1, minimal disc bulge at L4-5 but without central canal stenosis or neural foraminal narrowing, and slight left disc protrusion at L5-S1 with an annular tear, but no stenosis. (R. 352.) In January 2007, Corvin presented to the VAMC for a follow up appointment, and reported that he re-injured his back while working at a rental center moving furniture. (R. 331.) Corvin admitted at that time that he needed to find a new line of work. (R. 331.) Douglas Dalton, P.A. prescribed Lortab, but was hesitant to prescribe long-term narcotics for Corvin. (R. 332.)

In February 2007, Corvin saw Stephen Rinehart, M.D. with complaints of back pain, and requested an increase in narcotic medication. Dr. Rinehart denied Corvin's request for increased narcotics and told Corvin that he may need to consider a change in jobs. (R. 330.) In April 2007, Corvin presented to the VAMC complaining of a flare up of back pain after playing racquetball. Corvin was instructed to refrain from activities like racquetball, was given a work excuse for the day, and placed on one week of "light duty." (R. 323.) The physician's assistant again suggested that Corvin find a new form of employment. (R. 325.)

On May 4, 2007, Corvin returned to the VAMC stating that his employer had no light duty work and that he was "eating pain pills" for low back pain. (R. 322.) Corvin requested additional narcotic pain medication. (R. 322.) On May 10, 2007, Dr. Rinehart noted that Corvin was able to get on and off the examining table, bend down and lace his high-top boots, and heel/toe walk without difficulty. (R. 321-22.) Dr. Rinehart also noted that Corvin should not

7

have been out of his pain medicine. (R. 321.) Dr. Rinehart diagnosed Corvin with chronic low back pain, generalized back pain, and "apparent narcotic seeking behavior." (R. 322.) Dr. Rinehart suggested that Corvin have a second MRI and schedule physical therapy, and noted that based on Corvin's behavior and inconsistent findings on exam, he was "a high risk for drug dependence and drug abuse." (R. 322.)

In June 2007, an MRI of Corvin's lumbar spine showed moderate left paracentral disc protrusion at L5-S1 with questionable left nerve root impingement. (R. 820.) In July 2007, neurologist Dakshinamurty Gullapalli, M.D., noted that Corvin's pain was suggestive of a myofacial pain syndrome which did not correlate with the MRI findings. (R. 310.) Corvin also saw Steven Richards, M.D., for his back pain, and declined both an orthopedic referral for his left knee, and a mental health referral for depression. (R. 302.)

In August 2007, Corvin presented to the VAMC for a neurological consultation, complaining of back pain, which he rated as a two on a one to ten scale. William Broaddus, M.D., noted that Corvin looked anxious, had slightly decreased visual acuity, had full strength in his extremities, no muscle atrophy, and tenderness in his right ankle, mid back and low back. (R. 245.) Corvin was able to perform a shallow knee bend and hop on each leg. (R. 246.) Corvin reported that he was on medical leave from his job with the rental company. Dr. Broaddus recommended physical therapy, and a spine stimulator or pain pump. (R. 247.)

In November 2007, Corvin saw Dr. Broaddus for a follow up exam. Corvin continued to complain of low back pain, radiating to his groin. Corvin reported that neither physical therapy nor epidural steroid injections relieved his pain. Dr. Broaddus noted that Corvin "adamantly"

8

does not want a morphine pump or spinal stimulator, and that Corvin's symptoms of back pain do not correlate with his MRI results. (R. 250.)

In March 2008, Corvin saw James McLeod, M.D. for an orthopedic consultation of his left knee pain. (R. 805.) Corvin had full knee range of motion with mild left quadriceps atrophy. (R. 805.) Corvin also had full shoulder, neck and back range of motion without pain. (R. 806.) In May 2008, Dr. Gullapalli examined Corvin and found that he had normal tone and strength in his extremities, a normal gait, and good cervical spine range of motion and lumbar spine movements. (R. 937.) MRIs of Corvin's cervical and thoracic spine showed a C6-7 disc herniation. (R. 814.) Dr. Gullapalli denied Corvin's request for a prescription refill, and noted that Corvin's MRI results "do not correlate with the patient's symptomatology." (R. 938.) Dr. Gullapalli also referred Corvin for urine drug screening. (R. 938.)

In September 2008, Dr. McLeod performed an outpatient arthroscopy and debridement of Corvin's left knee. (R. 941.) Dr. McLeod noted that Corvin was doing reasonably well, had full range of motion in his knee, mild discomfort to palpation and extreme flexion. (R. 887.)

In March 2009, Corvin saw Dr. Gullapalli, complaining of constant back pain that worsened with physical activity. He reported that Percocet helped his pain the most and admitted to obtaining Percocet and Xanax from friends. (R. 876.) Dr. Gullapalli noted significant tenderness throughout Corvin's interscapular, lower thoracic and lumbar regions. Dr. Gullapalli again noted that Corvin's pain does not correspond to his MRI results. (R. 876.)

Corvin treated with Dr. Rogney from September through November 2009. Dr. Rogney's records are difficult to decipher, aside from his notes that Corvin is "doing better," and refilling Corvin's prescriptions. (R. 968-972.) In November 2009, Dr. Rogney completed the Clinical

9

Assessment of Pain forms, checking the boxes that Corvin suffers from incapacitating pain, and that physical activity increases pain to the extent that medication and/or bed rest is necessary. (R. 973, 975.)

Contrary to the disability opinion of Dr. Rogney, Corvin's medical records do not suggest that he suffered from incapacitating pain or that he required bed rest after standing, walking or bending. Although Corvin's medical records document his subjective complaints of back pain, the objective examinations do not demonstrate pain at a level even approaching "incapacitating." For example, in May 2007, Dr. Rinehart noted that Corvin was able to get on and off the examining table, bend down and lace his high-top boots, and heel/toe walk without difficulty. (R. 321-2.) In August 2007, Dr. Broaddus noted that Corvin was able to perform a shallow knee bend and hop on each leg. (R. 246.) In May 2008, Dr. Gullapalli found that Corvin had normal tone and strength in his extremities, a normal gait, and good cervical spine range of motion and lumbar spine movements. (R. 937.) In September 2009, Dr. Rogney's treatment notes state that Corvin was "doing better." (R. 969, 972.)

The treatment recommendations of Corvin's treating physicians are not reflective of those given to a person suffering from incapacitating pain. Corvin's physicians repeatedly recommended that he find less high-impact employment, and refrain from activities like racquetball. (R. 323, 325, 331.) His physicians continually noted reluctance to prescribe narcotic medication due to Corvin's drug-seeking behavior (R. 322, 331, 805, 877, 938), and in fact, Corvin's requests for narcotic medication refills were denied multiple times. (R. 322, 332, 877.)

Additionally, Corvin's daily activities undermine his contention that his impairments produce disabling pain. Corvin testified at the hearing that he suffers from pain on and off every

10

day, and that his pain is worse with repetition, kneeling, squatting, lifting, bending, stooping, twisting, being on his feet and walking for long periods of time (R. 48, 53-59.) However, he previously reported that he is able to move without difficulty, drives an automobile, cares for his daughter, performs light household chores and takes care of his personal needs. (R. 185-88.)

Corvin's complaints of pain are also diminished by his drug-seeking behavior and his refusal to try the non-narcotic treatment methods suggested by his treating physicians. Corvin declined his physicians' referrals for non-narcotic treatment options on numerous occasions, including mental health referrals and prescriptions for physical therapy, spine stimulators and pain pumps. (R. 250, 302, 395, 938.)

Further, as the ALJ noted, Dr. Rogney's opinion that Corvin suffers from incapacitating pain is contrary to other medical opinion evidence in the record. Drs. Broaddus and Gullapalli both state that Corvin's complaints of pain do not correlate with the abnormalities shown on his MRI results. (R. 250, 309, 938.) State Agency medical consultant Richard Surrusco, M.D., examined Corvin in March 2008, and found that he could perform a modified range of light work. (R. 271-75.) State Agency medical consultant Richard McGuffin, M.D. made the same finding in July 2008. (R. 452-56.) In July 2009, Dr. Stevens completed a medical source statement and found that Corvin could occasionally lift and carry up to twenty pounds, sit for six hours in an eight hour workday, stand for four hours in an eight hour workday, walk for three hours in an eight hour workday, perform occasional reaching and pushing/pulling and frequent handling, fingering and feeling. (R. 473-79.) On November 27, 2009, Dr. Stevens reaffirmed his opinion that Corvin can perform light, sedentary work in his answer to a post hearing interrogatory submitted by the ALJ. (R. 976).

11

Further, although the ALJ did not give Dr. Rogney's opinion controlling weight, he did not simply disregard it either. The ALJ gave Dr. Rogney's opinion little weight, and instead relied upon the functional assessments completed by Dr. Stevens. (R. 29.) The ALJ may use and rely upon evidence from a non-examining or non-treating physician if that opinion is consistent with the record. *Kyle v. Cohen,* 449 F.2d 489, 492 (4th Cir. 1971). Dr. Steven's functional assessments are consistent with the earlier state agency, non-examining physician opinions, which were prepared based on Corvin's medical records, and are supported by the clinical and diagnostic evidence. For the foregoing reasons, I find that there is substantial evidence to support the ALJ's decision not to give Dr. Rogney's opinion controlling weight and to provide greater weight to the opinion of Dr. Stevens.

## Mental Impairments

Corvin argues that the ALJ failed to make an individualized consideration of his mental impairments and did not appropriately assess the functional limitations caused by those mental impairments. Substantial evidence supports the ALJ's finding that Corvin's mental impairments are not severe.

Under the regulations, a non-severe impairment is one that does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic mental work activities include understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Thus, in determining whether an impairment is severe, the ALJ must consider whether the condition results in functional limitations that limit a claimant's ability to work. *Id*. It is well settled that

12

diagnoses alone are insufficient to show disability.  Instead, a claimant must show functional limitations associated with such diagnoses resulting in an inability to perform substantial gainful activity. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *Hays v. Sullivan*, 907 F.2d 1453, 1458 (4th Cir. 1990); *Price v. Barnhart*, 2005 WL 3477547, *6 (W.D.Va. 2005).  Corvin failed to prove the existence of any such functional limitations.

Corvin's records show very little mental health treatment. Corvin occasionally reported symptoms of depression to his treating physicians, but subsequently declined referrals for mental health treatment.  (R. 302, 395.)  In January 2008, Corvin reported having trouble falling asleep, feeling tired or having little energy, but denied problems with poor appetite, feeling down, depressed, or bad about himself.  (R. 391).  On March 6, 2008, a state agency psychologist, Louis Perrow, Ph.D., completed a Psychiatric Review Technique Form, concluding that Corvin suffered from non-severe mental impairments of depressive disorder and prescription narcotic-medication-seeking tendencies. (R. 259, 264.)  Perrow found that Corvin experienced no restriction on his activities of daily living, had only mild difficulties maintaining social functioning, concentration, persistence or pace, and experienced no episodes of decomposition (R. 266.)  The only mental health treatment that Corvin received during the relevant period was counseling for depression on four occasions between September and December 2008.  (R.565-79.)

The record also documents minimal restrictions on Corvin's activities of daily living and social functioning as a result of depression. Corvin testified that he lives with his father, stepmother and his seven year old daughter. (R. 41).  He takes care of his personal needs.  His daily activities include watching TV, visiting his grandmother, picking up his daughter from

13

school, washing dishes, and resting. (R. 43-4, 220.) Corvin reported that is "always ill or mad from hurting." (R. 225) At the administrative hearing, Corvin testified that he has good and bad days emotionally. (R. 52.) Corvin stays in his room on bad days, not talking to anyone. (R. 53.) He also reported occasional difficulty remembering to take his medication. (R. 222.) Given the above, the record documents no more than mild restrictions arising from depression.

Considering Corvin's limited mental health treatment, his minimal complaints regarding an alleged mental impairment and his rejection of referrals for mental health treatment, the state agency psychologist's findings that Corvin suffered from non-severe mental impairments and the imposition of very minimal restrictions on Corvin's functional abilities, I find that substantial evidence supports the ALJ's finding that Corvin did not suffer from a severe mental impairment.

### Cumulative Effect of Impairments

Corvin also argues that the ALJ failed to evaluate the cumulative effect of all of his impairments in combination. The ALJ must consider the combined effect of a claimant's impairments when determining a claimant's ability to work, and "adequately explain his or her evaluation of the combined effects of the impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citing *Reichenbach v. Heckler,* 808 F.2d 309, 312 (4th Cir.1985)). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [the] claimant unable to engage in substantial gainful activity.... [T]he [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50.

The ALJ explicitly stated that he considered all of Corvin's impairments in finding that Corvin was not disabled. (R. 22.) Further, the ALJ's decision reveals that he thoroughly

14

considered all of the evidence relating to Corvin's alleged physical and mental impairments. As the ALJ found, and as supported by substantial evidence, Corvin suffers from both severe and non-severe physical impairments, and non-severe mental impairments. The ALJ discussed the relevant medical evidence at length in his opinion, including Corvin's back pain, knee pain, type II diabetes mellitus, diminished visual acuity, and mental health treatment. (R. 22- 9.) In concluding that Corvin did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ thoroughly discussed his reasoning, particularly as to Corvin's mental impairments. (R. 18-25.) Furthermore, the restrictions imposed on Corvin's physical abilities by both the treating and nontreating sources are taken into account in the ALJ's physical RFC determination.

It is clear that the ALJ reviewed and considered Corvin's impairments in relation to one another in finding that he is not disabled and that he retained the RFC for a limited range of light work. The ALJ's thorough questioning of Corvin during the hearing regarding his ailments and attention to his medical records demonstrates that the ALJ considered every aspect of Corvin's claim. As such, the court finds that the ALJ did not fail to analyze the cumulative effect of Corvin's medical problems and did not discount Corvin's claims of depression. Instead, the ALJ considered all medical evidence of record, including allegations of depression, reviewed the mental health treatment records, and analyzed the cumulative effect the severe and non-severe impairments have on Corvin's ability to work. For these reasons, I find that the ALJ properly considered all of Corvin's impairments in combination in making the physical residual functional capacity determination and in concluding that Corvin was not disabled.

## Vocational Expert Opinion

Corvin also argues that the ALJ erred by not giving weight to all of the vocational expert's testimony. Because the ALJ found that Corvin could not perform a full range of light work, he brought in a vocational expert, Robert Jackson, to determine whether work exists in the national economy that Corvin can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of a claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989.)

The ALJ asked the vocational expert hypothetical questions based on his RFC assessment and Corvin's age, education, and vocational profile. (R. 63-6.) The vocational expert testified that Corvin could perform the unskilled, light jobs of night watchman, parking lot attendant, and lobby attendant/usher. (R. 64-5.) To accommodate Corvin's mental impairments, the ALJ further clarified with the vocational expert that an individual could perform those jobs even with a moderate reduction in concentration, persistence, and pace. (R. 65.)

Corvin argues that the ALJ erred by not relying upon the vocational expert's testimony that, based upon Dr. Rogney's assessment, there are no jobs that Corvin could perform. (R. 64.) As noted above, the ALJ was not required to give controlling weight to Dr. Rogney's opinion because it was not supported by the evidence of record. The ALJ may rely upon the vocational expert's testimony in response to the hypothetical scenario based upon the ALJ's assessment of Corvin's RFC because it contained all of Corvin's functional limitations that were reasonably established by the record. Accordingly, I conclude that the hypothetical adequately reflected all impairments of record.

16

## Conclusion

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Corvin is totally free from any distress. The objective medical record simply fails to document the existence of any physical and/or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Corvin's claim for benefits and in determining that his physical and mental impairments would not prevent him from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I conclude that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED**; and Corvin's motion for summary judgment **DENIED**.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: August 24, 2012

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

18